UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
ALLSTATE INSURANCE COMPANY,

                      Plaintiff,

      -against-

ERIC WEINER, ARTHUR WEINER AND DIANE
FENNER,

                   Defendants.

**MEMORANDUM & ORDER**
**19-CV-0499 (NGG) (CLP)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Allstate Insurance Company ("Allstate") filed a Complaint initiating a declaratory judgment action against Eric Weiner and Arthur Weiner (collectively, the "Weiner Defendants" or the "Putative Insureds," and individually, "Defendant Eric Weiner" and "Defendant Arthur Weiner") and against Diane Fenner. (Compl. (Dkt. 1).) In the Complaint, Plaintiff seeks a declaration that no insurance coverage is available to the Weiners with regard to claims arising from a slip and fall accident which allegedly caused injuries to Fenner and that Allstate is therefore under no obligation to indemnify the Weiners or defend them in a state court action initiated by Fenner. (*Id.* at 1.) On July 20, 2020, this court DENIED Plaintiff's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (M&O regarding Mot. For J. on the Pleadings ("2020 M&O") (Dkt. 25).) Before this court is Plaintiff's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (Mot. For S.J. ("Mot.") (Dkt. 42-3).) For the reasons stated below, the motion is GRANTED in part and DENIED in part.

## I.   BACKGROUND

### A.   Facts

On July 18, 2013, Beatrice Weiner, mother of Arthur and Eric Weiner, entered into an insurance policy contract with Allstate for a term of one year, until July 18, 2014. (Pl's R. 56.1 Stmt. (Dkt. 42-2) ¶¶ 29-31; Weiner Defs.' R. 56.1 Stmt. (Dkt. 42-21) ¶¶ 29-31; Def. Fenner's R. 56.1 Stmt. (Dkt. 42-25) ¶¶ 29-31). On October 16, 2013, in the middle of that policy's one-year term, Beatrice Weiner died. (Pl's R. 56.1 Stmt. ¶ 16; Weiner Defs.' R. 56.1 Stmt. ¶ 16; Def. Fenner's R. 56.1 Stmt. ¶ 16). On February 22, 2017, Defendant Diane Fenner allegedly slipped and fell while lawfully at 2209 East 59th Place, Brooklyn, New York 11234 (the "Subject Premises,") where Arthur Weiner and Beatrice Weiner had both lived prior to her death, and where Arthur Weiner had continued to live after her death. (Pl's R. 56.1 Stmt. ¶ 12; Weiner Defs.' R. 56.1 Stmt. ¶ 12; Def. Fenner's R. 56.1 Stmt. ¶ 12). On May 9, 2018, Fenner brought a state court action for damages based on the injuries resulting from her 2017 fall at the Subject Premises (the "Underlying Action"). (Pl's R. 56.1 Stmt. ¶¶ 13-14; Weiner Defs.' R. 56.1 Stmt. ¶¶ 13-14; Def. Fenner's R. 56.1 Stmt. ¶¶ 13-14). In the state court action, Fenner alleges that there was an "inherently dangerous latent defect and condition" within the Subject Premises and that one or both of the Weiners caused that defect or had actual or constructive knowledge of it. (Pl's R. 56.1 Stmt. ¶ 14; Weiner Defs.' R. 56.1 Stmt. ¶ 14; Def. Fenner's R. 56.1 Stmt. ¶ 14.)

The insurance policy in question stated, at the time that it was issued to Beatrice Weiner, that an "Insured Person(s)" under the policy includes "[the named insured] and, if a resident of [the named insured's] household: (a) any relative; 'and (b) any dependent person in [the policyholder's] care.'" (Pl's R. 56.1 Stmt. ¶¶ 18, 20; Weiner Defs.' R. 56.1 Stmt. ¶¶ 18, 20; Def. Fenner's R. 56.1 Stmt. ¶¶ 18, 20; 2013-14 Allstate Policy (Dkt.

44-1) at ECF 27). The policy further included a requirement that "[the named insured] must … inform [Allstate] of any change in title, use or occupancy of the *residence premises*" and "[the named insured] may not transfer this policy to another person without [Allstate's] written consent." (Pl's R. 56.1 Stmt. ¶ 21; Weiner Defs.' R. 56.1 Stmt. ¶ 21; Def. Fenner's R. 56.1 Stmt. ¶ 21; 2013-14 Allstate Policy at ECF 29).

In a sub-section titled "Continued Coverage After Your Death," the policy stated that "[i]f [the named insured] die[s], coverage will continue until the end of the premium period for: (1) [the named insured's] legal representative while acting as such, but only with respect to the residence premises and property covered under this policy on the date of [the named insured's] death. (2) An **insured person**, and any person having proper temporary custody of [the named insured's] property until a legal representative is appointed and qualified." (Pl's R. 56.1 Stmt. ¶ 22; Weiner Defs.' R. 56.1 Stmt. ¶ 22; Def. Fenner's R. 56.1 Stmt. ¶ 22; *see also* 2013-14 Allstate Policy at ECF 30.)

According to Allstate, the policy terminated upon the end of the premium period following the October 16, 2013 death of Beatrice Weiner, the named insured, as Allstate was not informed of her death until after Fenner's 2017 fall and no written consent was provided for a transfer of the policy to another person. (Pl's R. 56.1 Stmt. ¶¶ 29-32.) Both the Weiner Defendants and Defendant Fenner dispute this version of events, with the Weiner Defendants arguing that Arthur Weiner *did* in fact notify Allstate of Beatrice Weiner's death. (Weiner Defs.' R. 56.1 Stmt. ¶¶ 30-32; Def. Fenner's R. 56.1 Stmt. ¶¶ 30-32.)

All parties agree that the policy was renewed after the death of Beatrice Weiner, and that Allstate continued to write policies for the property in the name of Beatrice Weiner over that period. (Pl's R. 56.1 Stmt. ¶¶ 33-34; Weiner Defs.' R. 56.1 Stmt. ¶¶ 33-34; Def. Fenner's R. 56.1 Stmt. ¶ 33.) After Beatrice Weiner's

death, Arthur and Eric Weiner became co-owners of the Subject Premises by operation of law. (Pl's R. 56.1 Stmt. ¶ 12; Weiner Defs.' R. 56.1 Stmt. ¶ 12; Def. Fenner's R. 56.1 Stmt. ¶ 12; Eric Weiner Resp. to Interrogatories (Dkt. 42-16) at ECF 24.) Arthur Weiner, who had lived on the property while their mother was alive, continued to live at the Subject Premises until 2018, the year it was sold. (Pl's R. 56.1 Stmt. ¶ 56; Weiner Defs.' R. 56.1 Stmt. ¶ 56; Def. Fenner's R. 56.1 Stmt. ¶ 56; Eric Weiner Resp. to Interrogatories at ECF 24; Arthur Weiner Depo. (Dkt. 42-11) at ECF 33-34.) Eric Weiner did not reside at the Subject Premises during any of the years in question. (Eric Weiner Resp. to Interrogatories at ECF 24; Eric Weiner Depo (Dkt. 42-12) at ECF 13.)

### B. Procedural History

On January 25, 2019, the instant declaratory judgment action was brought based on diversity jurisdiction, as Plaintiff is a citizen of Illinois, Defendants are citizens of New York and/or New Jersey, and the amount in controversy is greater than $75,000. (Pl's R. 56.1 Stmt. ¶¶ 1-7; Weiner Defs.' R. 56.1 Stmt. ¶¶ 1-7; Def. Fenner's R. 56.1 Stmt. ¶¶ 1-7). Shortly thereafter, Plaintiff brought a Motion for Judgment on the Pleadings. (Dkt. 20.) This court DENIED that Motion on July 20, 2020, stating that "[a]ccepting as true the factual allegations within Defendants' affirmative defenses, genuine issues of material fact remain[ed] that prevent[ed] Allstate from obtaining judgment as a matter of law." (2020 M&O at 7.) The parties conducted discovery before Chief Magistrate Judge Cheryl L. Pollak from October 2020 through January 2022. (*See* Oct. 28, 2020 Minute Entry; Jan. 26, 2022 Minute Entry.) After discovery was complete, Defendant Allstate sought and was granted leave to file a Motion for Summary Judgment. (*See* Dkt. 37; May 27, 2022 Minute Entry.) Allstate's fully briefed Motion for Summary Judgment was filed on September 16, 2022. (*See* Dkt. 42.) On September 29, 2022,

in response to the court's September 23, 2022 order, Allstate further filed the complete, true, and accurate Allstate Insurance Company Deluxe Policy that had been in place for Beatrice Weiner from July 18, 2013 to July 18, 2014. (*See* Sept. 23, 2022 Text Order; 2013-14 Allstate Policy (Dkt. 44-1).)

## II. STANDARD OF REVIEW

The court's role on a motion for summary judgment "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Lionel v. Target Corp.*, 44 F. Supp. 3d 315, 318 (E.D.N.Y. 2014) (quoting *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006)). Summary judgment is appropriate when the movant shows "that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." *Am. Empire Surplus Lines Ins. Co. v. Certain Underwriters at Lloyd's London*, No. 16-CV-5664 (AMD) (JO), 2018 WL 10456838, at *4 (E.D.N.Y. July 23, 2018) (quoting Fed. R. Civ. P. 56(a)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue of fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue of fact cannot be established by "[c]onclusory allegations, conjecture, and speculation." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

"[T]he party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial." *Certain Underwriters*, 2018 WL 10456838, at *4. If the non-movant is unable to establish that each element is at least reasonably disputed based on the evidentiary record, the motion should be granted.

## III. DISCUSSION

### A. Parties' Apparent Disagreement About the "Burden"

The parties' briefing implies a disagreement as to who bears the burden with regard to proving coverage, or lack thereof, at the summary judgment stage. The court believes this issue is well-settled and fears the Weiner Defendants may be confusing the issue.

Plaintiff cites to *Consolidated Edison Co. of New York v. Allstate Insurance Co.* for the dual propositions that (1) the burden is on "the insured to establish coverage and for the insurer to prove that exclusion in the policy applies to defeat coverage;" and (2) the question of whether the dispute is about coverage or exclusion should be answered by examining the insurance policy's language. (Mot. at 5-6 (citing 98 N.Y.2d 208, 218, 221-22 (2002).) Plaintiff correctly asserts that the issue in this case is an issue of whether there is coverage, and that the burden is therefore on the "putative insured" to establish coverage. (*Id.* at 6.) Defendants counter that the well-known burden on proof for movants at summary judgment should, in effect, supersede this insurance-specific burden allocation doctrine. (Weiner Opp. (Dkt. 42-20) at 6 (citing *Blair v. Allstate Indem. Co.*, 998 N.Y.S.2d 754, 754-55 (4th Dep't 2015) ("Generally, an insured seeking to recover for a loss under an insurance policy has the burden of proving that a loss occurred and also that the loss was a covered event within the terms of the policy. An insurer moving for summary judgment, however, has the initial burden of coming forward with admissible evidence establishing that the loss was not a covered loss or that the loss was excluded from coverage.")).) Defendants are wrong to think that there is a tension between these two controlling rules of burden allocation. It is the moving party's burden to prove that there is no issue of fact on summary judgment, which here, happens to be

an insurance company. Separately, the burden to prove coverage falls to the insured. In the view of this court, those two requirements are fully reconcilable and their interplay needs no further discussion.

## B.  Duty to Indemnify

At the summary judgment stage, a plaintiff is entitled to a declaratory judgment that it has no duty to indemnify if it can prove that there is no material question of fact as to whether there was coverage. Plaintiff has provided a copy of an insurance policy, and a recounting of facts, that it asserts prove, when taken together, that there was no coverage for the Putative Insured at the time of the claim in question and there are no remaining questions of fact as to whether Plaintiff has a duty to indemnify the Putative Insureds in the Underlying Action. (Mot. at 20.) Defendants in turn raise various legal theories of coverage. (Weiner Opp. at 6-13; Fenner Opp. at 3-9.) If any one of these theories is found to apply to the facts at issue and Plaintiff fails to establish a lack of genuine dispute of material fact with regard to one such theory, Plaintiff will have failed to meet its burden. To ascertain whether there are triable issues of fact for the jury as to whether either Putative Insured had coverage under an Allstate insurance policy at the time of Defendant Fenner's accident, the court will address each of the Defendants' theories in turn.

### 1.   Coverage Under the Plain Language of the Policy

Plaintiff argues first that the "Allstate policy clearly and unambiguously provides that when the named insured dies, coverage will only be provided until the end of the premium period following their death," (Mot. at 6), that the named insured on the 2013-14 Allstate Policy (Beatrice Weiner) had already passed away at the time of the disputed insurance claim, and that the premium period following her death had long since ended. (*Id.* at 1.) The Defendants seek to raise an issue of fact as to whether coverage was in effect for the Putative Insureds at the time of the claim, by

arguing that the plain language of the policy "does not require a finding that there was no coverage for ARTHUR WEINER and ERIC WEINER." (Weiner Opp. at 7.)

The Weiner Defendants first argue that because the policy annexed to Allstate's Motion for Summary Judgement as Exhibit F was not a copy of the policy in effect at the time of the death of Beatrice Weiner in 2013 but was instead a copy of the policy in effect at the time of Defendant Fenner's accident, a question remains as to what the policy terms were in 2013 and whether that policy might have dealt differently with death of the named insured. (*See id* at 7.) The Weiner Defendants are correct that the dispute must be decided based on the terms of the 2013-14 Allstate Policy. However, at the request of this court, Allstate filed the complete, true, and accurate Allstate Insurance Company Deluxe Policy that was in place for Beatrice Weiner from July 18, 2013 to July 18, 2014. (Sept. 23, 2022 Text Order; 2013-14 Allstate Policy.) The court has reviewed both policies and finds that the provisions central to the instant dispute are the same in the 2013-14 Allstate Policy, (2013-14 Allstate Policy at ECF 27-30), as in the 2016-17 Allstate Policy, (2016-2017 Allstate Policy (Dkt. 432-9) at ECF 30-33).

Plaintiff is correct that under the plain language of the policy there was no coverage for either Arthur or Eric Weiner after the end of the premium period following Beatrice Weiner's death. (*See* Mot. at 2; Pl's R. 56.1 Stmt. ¶¶ 24-27.) Arthur Weiner may, while the 2013-14 Allstate Policy was in effect, have been an "insured person" under the policy, based on his status as a "relative" of the named insured who was also a resident of the household.[1]

---

[1] Although in his deposition Arthur Weiner describes the home as a two-family house, (Arthur Weiner Depo. at ECF 12-14), other statements throughout the record indicate that he and his mother were part of a single household while she was alive, (*see, e.g.,* Eric Weiner Depo. at ECF 15; Arthur Weiner Depo. at ECF 33.) Although the question of whether the

(Weiner Opp. at 3; 2013-14 Allstate Policy at ECF 27; Arthur
Weiner Depo at ECF 12-14, 33.) As an "insured person," Arthur
Weiner would have continued to benefit from the 2013-14 All-
state Policy's coverage until the end of the premium period
following Beatrice Weiner's death under the "Continued Cover-
age After Your Death" section. (*Id.*; 2013-14 Allstate Policy at
ECF 30; Arthur Weiner Depo at ECF 33-34.) Eric Weiner, though
not a resident of the household, may also have been covered by
the 2013-14 Allstate Policy for the period between Beatrice
Weiner's death and the end of the premium period following that
death, due to his status as "legal representative" or "Administra-
tor" of Beatrice Weiner's estate. (*Id.* at 3-4; 2013-14 Allstate
Policy at ECF 30; Eric Weiner Interrogatories at ECF 24.) But the
premium period following Beatrice Weiner's death ended July
18, 2014, and Ms. Fenner's accident is not alleged to have taken
place until February 22, 2017, two-and-a-half years later. (Pl's R.
56.1 Stmt. ¶¶ 12, 29-31; 2013-14 Allstate Policy at ECF 1.) As it
is undisputed that neither Arthur nor Eric Weiner received writ-
ten consent to transfer the 2013-14 Allstate Policy after the death
of Beatrice Weiner, it is clear to this court that pursuant to its
plain language, the 2013-14 Allstate Policy was no longer in ef-
fect at the time of Ms. Fenner's accident. Moreover, the
subsequent renewals could not have been effective as to Beatrice
Weiner, as it is not possible for a deceased person to enter into a
contract. *De Kovessey v. Coronet Properties Inc.*, 69 NY2d 448, 456
(N.Y. 1987); *see also David v. Westfield Insurance Company*, No.
21-CV-2797, 2022 WL 767156, at *2 (6th Cir. 2022).

Finally, the Weiner Defendants argue that the proper interpreta-
tion of the plain language calls for liberal construal, and for "any
ambiguity [in the text] [] to be resolved in favor of the insured."

---

mother and son were living as a single household or as residents of two
separate units within a single house while she was alive is an open one, it
need not be answered here as it is not ultimately outcome determinative.

(Weiner Opp. at 7.)  In this vein, the Weiner Defendants point to *Lumbermen's Mutual Casualty Co. v. Brown*, in which the court chose to liberally construe an auto insurance policy which provided coverage for a "person having temporary custody of the vehicle until the appointment and qualification of a legal representative" after the death of the named insured as covering "the alternate executor [of] the name[d] insured and the person to whom ownership of the car eventually passed" in the name of public policy. (*Id.* at 8 (citing 20 N.Y.2d 542, 545 (1967)).) That case is clearly distinguishable from the matter at bar, where the plain language of the Beatrice Weiner's homeowner's liability policy did not allow for *any* coverage to persons beyond one premium period after the death of the named insured. *See* 2013-14 Allstate Policy at ECF 30.

For the reasons stated above, there is no genuine issue of material fact as to whether the Weiner Defendants are entitled to establish coverage by the plain language of the 2013-14 Allstate Policy. Under the terms of the express policy contract, no coverage existed for either of the Putative Insureds (Arthur and Eric Weiner) after the death of the named insured (Beatrice Weiner).

### 2.   Equitable Relief

The Weiner Defendants and Defendant Fenner make a set of arguments that essentially boil down to the following: by the date of Ms. Fenner's accident, either (1) Allstate was estopped from rescinding or refusing coverage because of failure to do so at an earlier date; (2) an implied contract had formed, under which Allstate was bound; or (3) equitable principles demand that the contract be reformed to reach this outcome. (Weiner Opp. at 10-12; Fenner Opp. (Dkt. 42-23) at 4.) There is precedent for such forms of equitable relief. Some New York state courts, as well as courts in other circuits, looking to general principles of contract interpretation, have been willing to find contracts implied in fact, find that an insurer is estopped from rescinding coverage, or find

that the contract should be reformed, even where the plain language of the contract does not support either result and there is no ambiguity in the text. Below the court addresses each of these equitable remedies.

    *a.  Equitable Estoppel*

In some instances, courts have been willing to estop insurers from denying coverage based on evidence that the insurer had previously been notified of the event or facts which would have allowed it to rescind the policy. "Under New York law, waiver is the voluntary and intentional relinquishment of a known right. Waiver requires evidence of a clear manifestation of intent, and cannot be lightly inferred. Intent is established if the insurer had 'sufficient information' regarding the grounds for rescission but chose to not exercise its right to rescind." *Am. Gen. Life Ins. Co. v. Salamon*, No. 09-CV-5428 (KAM) (SMG), 2011 WL 976411 at *3 (E.D.N.Y. Mar. 16, 2011), aff'd, 483 F. App'x 609 (2d Cir. 2012). Cases on equitable estoppel have turned on when insurers gained knowledge of "events which allow[] for cancellation," and their actions thereafter. *Hydell v. N. Atl. Life Ins. Co.*, 667 N.Y.S.2d 391, 393 (2d Dep't 1998).

Cases in which courts have found waiver or estoppel under New York law have consistently involved some sort of fraud or misrepresentation on behalf of the insured coming to light. *See, e.g., Cont'l Ins. Co. v. Helmsley Enters., Inc.*, 622 N.Y.S.2d 20, 20 (1st Dep't 1995) ("[P]laintiff waived its right to seek rescission of the contract of insurance when it knowingly accepted premium payments for several months following discovery of the alleged misrepresentations [regarding the insured's loss history] upon which it claimed to have relied when it issued the policies"); *Scalia v. Equitable Life Assurance Soc'y of the U.S.*, 673 N.Y.S.2d 730, 730–31 (2d Dep't 1998) (noting that the defendant "waived its right to rescind the disability income insurance policy, by continuing to accept premium payments after it gained sufficient

knowledge of the alleged misrepresentations upon which it claims to have relied when issuing the policy"); *Chi. Ins. Co. v. Kreitzer & Vogelman,* 265 F.Supp.2d 335, 343-44 (S.D.N.Y. 2003) (discussing whether an insurer had waived its right to rescind a policy in the context of material misrepresentations by an attorney); *Sec. Mut. Life Insur. Co. v. Rodriguez,* 880 N.Y.S.2d 619, 625 (1st Dep't 2009) ("Plaintiff's acceptance of premiums from Mobarak after learning of the alleged fraud allowing for cancelation of the policies constituted a waiver of (or more properly an estoppel against) its right to cancel or rescind the policies"); *5512 OEAAJB Corp. v. Hamilton Ins. Co.,* 138 N.Y.S.3d 555, 1137-38 (2d Dep't 2020) (finding an insurer waived the right to rescind by renewing the policy after learning that the insured had made a misrepresentation regarding the presence of an on-site sprinkler system in their initial application for insurance).

All of the above cases rested not only on the insurers' failures to rescind policies after becoming aware of their right to, but also on findings that the insurers continued to accept premium payments, in effect re-ratifying the contract. *Bible v. John Hancock Mut. Life Ins. Co.,* 256 N.Y. 458, 462 (1931) ("In the absence of warranty or warning, the delivery of the policies by the insurer, and the keeping of the premiums with knowledge of a then existing breach of the conditions . . . gave rise to a waiver or, more properly, an estoppel."); *U.S. Life Ins. Co. in City of N.Y. v. Blumenfeld,* 938 N.Y.S.2d 84, 86 (2012) ("[A]n insurer that accepts premiums after learning of facts that it believes entitles it to rescind the policy has waived the right to rescind.").

It is undisputed that Arthur Weiner continued to pay, and Allstate continued to accept, premium payments on Beatrice Weiner's insurance policy after her death. However, the cases cited by Defendants and discussed above all involve a fraudulent representation being discovered during the contract term and the

insurer gaining the ***right to rescind*** the policy in question, though the term had not yet ended. The case at bar must be distinguished from that factual paradigm. This is not a case where fraud was discovered, giving the insurer the right to rescind. Instead, this is a case where the policyholder died and the policy expired, *see, e.g., Green v. Allstate Ins. Co.*, No. 14-CV-794 (ELR), 2015 WL 11233460, at *5 (N.D. Ga. May 5, 2015), but the insurer continued to accept auto-paid premiums and send renewals, despite purported notification of that death to an Allstate agent.

There is a genuine factual dispute as to whether that notification to an agent took place.[2] *Cf. Diaz v. Allstate Ins. Co.*, 2017 WL

---

[2] In his deposition, Arthur Weiner stated that two weeks after his mother passed away, he "called and spoke to a girl from Allstate on Avenue N, and told her ... that she passed away, and tell me what we have to do next." (Arthur Weiner Depo at 16-17.) Arthur Weiner testified that the person he spoke with from Allstate on Avenue N "said [she would] call [him] back, and never did." (*Id.* at 17.) Because "[t]he money continued to be removed month after month . . . [he] figured, okay" and "kept on paying it." (*Id.*) Although Arthur Weiner could not remember the Allstate representative's name, he did remember some identifying details, and explained that he called that specific Allstate because he "knew that that was where [his mom] did her Allstate business." (*Id.*) In Defendant Arthur Weiner's response to Plaintiff's Interrogatories, he stated "ARTHUR WEINER called and spoke to the female ALLSTATE agent 2 to 3 weeks after the death of BEATRICE WEINER and told her about the death of BEATRICE WEINER," and furthermore that "Arthur Weiner was told that ALLSTATE would take care of it and get back to Arthur Weiner." (Arthur Weiner Resp. to Interrogatories at ECF 14-15.) (*See also* Weiner Defs.' R. 56.1 Stmt. ¶¶ 41, 44-45.)

Relevant deposition testimony of a defendant and/or a defendant's responses to interrogatories can be sufficient evidence to give rise to an issue of material fact at summary judgment, as "if there is *any evidence in the record from any source from which a reasonable inference could be drawn* in favor of the nonmoving party, summary judgment is improper." *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000) (emphasis added).

4927179, at *1 (Sup. Ct. Queens Cnty., Oct. 24, 2017) ("[I]t is *uncontested* that defendant was first notified of [the named in-sured's] death ... when a claim was submitted for the fire damage to the premises") (emphasis added); *Green*, 2015 WL 11233460, at *1; *Disco Inc. v. Travelers Indem. Co. of Am.*, No. 16-CV-1403 (GBL) (JFA), 2017 WL 11501877, *5 (E.D.V.A. Mar. 22, 2017) ("[B]ecause the record contained *no indication* that the insurer had notice of the named insured's death and contained no facts to support a finding of an implied-in-fact contract, there was no genuine issue of material fact that the Policy was not valid at the time of the fire loss.") (emphasis added); *see also Wells Fargo Bank, N.A. v. Allstate Ins. Co.*, No. 14-CV-01379, 2016 WL 1182724, at *4-5 (N.D. Ohio Mar. 28, 2016). And the existence of a genuine dispute as to a material fact would bar an award of summary judgment for Allstate. But this genuine factual issue is not *material* for the purposes of determining whether Allstate is estopped from denying coverage. Under the terms of the 2013-14 Allstate Policy, in order for coverage to be in place after the premium period following the policyholder's death, either (1) a new contract would have to have been created with the new property owner, or (2) the policy would have had to have been transferred in writing to the new property owner. (*See* Pl's R. 56.1 Stmt. ¶¶ 21-22; Weiner Defs.' R. 56.1 Stmt. ¶¶ 21-22; Def. Fen-ner's R. 56.1 Stmt. ¶¶ 21-22.) Here, there was no failure to rescind. Instead, there was a failure to take the affirmative step of insuring Arthur Weiner. Accordingly, an equitable estoppel ar-gument is inapplicable.

While Arthur Weiner may have a negligence claim against the agent with whom he spoke for failing to affirmatively insure, *see*

---

Despite Plaintiff's stated position that "no one informed Allstate that Be-atrice Weiner had passed away until after the subject accident," (Pl's R. 56.1 Stmt. ¶ 32), the above-mentioned deposition testimony and interrogatory responses could, if put to a jury, create a reasonable inference against the Plaintiff's position.

*Sawyer v. Rutecki*, 937 N.Y.S.2d 811, 812 (4th Dep't 2012) (noting that insurance agents "have no continuing duty to advise, guide or direct a client to obtain additional coverage" except in "[e]xceptional and particularized situations" such as when "there was some interaction regarding a question of coverage, with the insured relying on the expertise of the agent"); *Gatto v. Allstate Indem. Co.*, 173 A.D.3d 1711, 1712 (2019) (asserting that there was no "common-law duty to advise, guide, or direct [a decedent's survivor] to obtain insurance coverage" when "there was no interaction [between the agent and the decedent's survivor] regarding questions of coverage"), his purported notification cannot, as a matter of law, be said to have estopped Allstate from refusing coverage under the original policy.[3] Additionally, there

---

[3] All parties rely heavily on the Southern District of Ohio and Sixth Circuit decisions in *Ramsey v. Allstate Ins. Co.*, No. 09-CV-207, 2009 WL 10679766 (S.D. Ohio Dec. 28, 2009) ("*Ramsey I*"), *Ramsey v. Allstate Ins. Co.*, 416 F. App'x 516 (6th Cir. 2011) ("*Ramsey II*"), *Ramsey v. Allstate Ins. Co.*, No. 09-CV-207, 2011 WL 5520644 (S.D. Ohio Nov. 14, 2011) ("*Ramsey III*"), and *Ramsey v. Allstate Ins. Co.*, 514 F. App'x 554 (6th Cir. 2013) ("*Ramsey IV*") when discussing equitable estoppel. (*See* Mot. at 8-10; Weiner Opp. at 8-9; Fenner Opp. at 3-4.) Despite the closely overlapping issues at play, the *Ramsey* line of cases does not ultimately reach the issue of whether continuing to renew and accept payments on an insurance policy after putative notification of the death of the named insured estops an insurer from denying coverage. In *Ramsey I*, the district court granted summary judgment for Allstate based on facts similar to those at bar. *See generally* 2009 WL 10679766. In *Ramsey II*, the Sixth Circuit, holding that "the district court failed to consider whether Allstate is estopped from denying coverage because it received constructive notice of [the named insured's] death," "remand[ed] for the district court to consider whether Allstate received constructive notice of [the named insured's] death and, *if it did, whether it is estopped from denying coverage to* [the named insured's son]." *Ramsey II*, 416 F. App'x at 520 (emphasis added.) On remand, the district court held that Allstate had *not* received constructive notice, but did not reach the question of whether Allstate would have been estopped from denying coverage *had* it been given constructive notice but continued to renew the policy and accept premium payments. *Ramsey III*, 2011 WL 5520644, at *8. Lastly, the circuit court then affirmed the district court, also without

is no evidence whatsoever that Allstate should have been estopped from denying coverage to Eric Weiner.

### b.   *Implied-in-Fact Contract*

Related to but distinct from the issue of equitable estoppel is the question of whether the parties, through their conduct, entered into an implied-in-fact contract after the expiration of the policy for which Beatrice Weiner was the named insured. "Under New York law, the conduct of the parties may lead to the inference of a binding agreement: A contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct." *Brown v. St. Paul Travelers Co., 331 F. App'x* 68, 70 (2d Cir. 2009) (summary order); *see also Berlinger v. Lisi,* 731 N.Y.S.2d 916, 917 (3rd Dep't 2001) ("[W]ith respect to implied-in-fact contracts, based on the facts and circumstances surrounding the dispute as manifested in the acts and conduct of the parties, there must be an indication of a meeting of minds of the parties constituting an agreement.").

 The elements of "[a]n implied-in-fact contract under New York law," to be proven through an examination of the attendant circumstances, are "consideration, mutual assent, legal capacity and legal subject matter." *828 Hamilton Inc. v. United Specialty Ins. Co.,* No. 16-CV-5073 (ARR) (SMG), 2018 WL 5817155, at *9 (E.D.N.Y. Nov. 6, 2018). Finally, under New York law "[a] contract cannot be implied in fact where there is an express contract covering the subject matter involved." *Julien J. Studley, Inc. v. N.Y. News, Inc.,* 70 N.Y.2d 628, 629 (1987).

Here, there is no question that the putative implied-in-fact contract would have been about the legal subject matter –

---

reaching the second part of the issue. *See generally Ramsey IV,* 514 F. App'x at 558.

homeowners' insurance for the Subject Premises. The consideration element was also easily met by Arthur Weiner making payments to Allstate each month over the period in question. The issues of legal capacity and mutual assent are thornier. Arthur Weiner indisputably had legal capacity to enter into a contract on his own behalf. Whether the woman at the "Allstate Agency" Mr. Weiner purports to have spoken to would have had the legal authority to enter into an implied-in-fact contract with Mr. Weiner is a question of fact that would depend on the nature of her relationship to Allstate (*i.e.*, exclusive agent for the insurer rather than a general insurance broker employed by the insured).

Similarly, the question of mutual assent is fact specific. In some cases, New York courts have found that mutual assent existed where payments were made and accepted on a regular basis, and services were continually renewed. *See, e.g., Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 645 (S.D.N.Y. 2011), aff'd, *Fink v. Time Warner Cable*, 714 F. 3d 739 (2d Cir. 2013) ("Plaintiffs allege that they paid for and received cable services on a monthly basis from Defendant. This is sufficient to meet both the "mutual assent" and "consideration" aspects of the alleged contract.") Here, insurance payments were made and accepted and contract renewals continued to be offered. But other cases highlight that "[m]utual assent entails assent to the contract's essential terms and conditions, and if an agreement is not reasonably certain in its material terms, there can be no enforceable legal contract," *828 Hamilton*, 2018 WL 5817155, at *9, and that "[t]o establish mutual assent, a plaintiff must plausibly allege words or conduct by the parties sufficiently clear to permit an infer[ence] that the promise would have been explicitly made, had attention been drawn to it." *Anjani Sinha Med. P.C. v. Empire HealthChoice Assurance, Inc.*, No. 21-CV-138 (RPK) (TAM), 2022 WL 970771, at *6 (E.D.N.Y. Mar. 31, 2022); *see also Maas v. Cornell Univ.*, 94 N.Y.2d 87, 94 (1999). Knowledge of the identity of the counterparty (*i.e.,* knowledge possessed by Allstate that it was insuring

Arthur Weiner not Beatrice Weiner) is undoubtedly an essential term of an insurance contract, *see e.g., Atai v. Dogwood Realty of N.Y., Inc.*, 807 N.Y.S.2d 615, 697-98 (2d Dept. 2005), so the question of mutual assent rests on the factual question of whether notification of Beatrice's Weiner death was, in fact, made. Further, the "inference that the promise would have been explicitly made, had attention been drawn to it," *Anjani Sinha Med. P.C.*, 2022 WL 970771, at *6, can only fairly be drawn if Mr. Weiner did, indeed, speak with an Allstate agent whose actions can be imputed to Allstate and who continued to provide him with insurance contract renewals after he stated that his mother had passed away.

For these reasons, there remains a genuine issue of material fact as to whether or not an implied-in-fact contract was in place between Allstate and Arthur Weiner at the time of Ms. Fenner's accident.[4] That said, to the extent that Eric Weiner is also seeking coverage under this theory, the court sees no evidence that there could have been an implied-in-fact contract between Allstate and Eric Weiner at that time.[5]

### c.   *Equitable Reformation*

New York state courts have, under certain circumstances, equitably reformed insurance policy contracts. "Where mutual mistake exists, a court may reform an insurance policy to identify the proper insured." *Prospect JV Dev. LLC v. Ill. Union Ins. Co.*, No. 18-

---

[4] *Ramsey IV's* reversal of the district court on the issue of implied-in-fact contract is instructive given its factual similarities, *see* 514 F. App'x at 558-59, though the court notes that the implied-in-fact contract inquiry here rests on New York State law, while the inquiry in *Ramsey IV* rested on Ohio State law.

[5] Even if an implied-in-fact policy existed, its terms would have been the same as the terms on the express Allstate Policy contracts, which require an insured person to reside at the Subject Premises in order to be covered by the policy. It is undisputed that Eric Weiner did not reside at the Subject Premises during the period in question.

CV-5837 (WFK) (LB), 2021 WL 5066592, at *3 (E.D.N.Y. Sept. 27, 2021). "Furthermore, when it is established that, through innocent mistake of an applicant for insurance, the nature of the ownership of the property to be insured . . . is misdescribed, the error is mutual for the purposes of reformation, even though the insurer is not aware of the error." *Id.* However, "courts will not reform insurance policies to add additional insureds if that was not the intent of the parties when the contract was formed." *Id.* at 4; *see also Klapan v. Dryden Mut. Ins. Co.*, 701 N.Y.S.2d 192, 193 (4th Dep't 1999) ("A written instrument that accurately reflected the intention of the parties when it was executed is not subject to reformation."). There is no evidence that Beatrice Weiner intended to insure Arthur Weiner—other than to the extent that relatives who happened to reside in her home while she was alive would be automatically insured—or Eric Weiner—other than to the extent that he was arguably covered as the administrator of her estate for the remainder of the premium period following her death—when she entered into the contract. Nor is there evidence that she believed, incorrectly, that the insurance contract independently covered either of her children. In fact, there is no evidence of mutual mistake in any regard. Equitable reformation of the 2013-14 Allstate Policy contract is thus unavailable for either Weiner Defendant.[6]

---

[6] The Weiner Defendants and Defendant Fenner cite at length to *Pratz v. Wayne Coop. Ins. Co.*, 724 N.Y.S. 2d 293 (N.Y. Sup. Ct. 2001) in support of their argument for equitable reformation. (*See* Weiner Opp. at 11-12; Fenner Opp. at 6-7.) This court acknowledges that the facts in *Pratz* bear a strong resemblance to the facts of the case at bar. *See Pratz*, 724 N.Y.S. 2d at 294-95. However, this court is not persuaded by *Pratz*'s interpretation of state law—that facts similar to those at bar could be construed as a mistake of misdescription, and equitable reformation of the contract was thus available. Instead, the court holds that Beatrice Weiner's choice to purchase an insurance policy that did not cover her son after her death cannot

3.   Failure to Timely Deny Coverage or Disclaim
Liability in the State Court Suit

Defendants also raise the question of whether Allstate failed to
timely deny coverage or disclaim liability in the lawsuit. Defend-
ants point to New York Insurance Law Sec. 3420(d)(2), (*see*
Weiner Opp. at 12), which states as follows:

> If *under a liability policy* issued or delivered in this state, an
> insurer shall disclaim liability or deny coverage for death or
> bodily injury arising out of a motor vehicle accident or any
> other type of accident occurring within this state, it shall give
> written notice as soon as is reasonably possible of such dis-
> claimer of liability or denial of coverage to the insured and
> the injured person or any other claimant.

New York Insurance Law Sec. 3420(d)(2) (emphasis added).
But by its own terms, the above provision applies only to inju-
ries that arise "under a liability policy." *Id.* In interpreting this
statute, New York state courts have made clear that if there was
no insurance policy in place to begin with, there was no need to
disclaim liability or deny coverage. *See Roman Cath. Diocese of
Brooklyn v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 21 N.Y. 3d
139, 147 (2013) ("[A] notice of disclaimer is not required in the
event there is no insurance at all and, therefore, no obligation
to disclaim or deny . . . the notice requirement only applied to
situations in which a policy of insurance that would otherwise
cover the particular accident is claimed not to cover it *because of
an exclusion in the policy*.") (emphasis in original). New York

---

properly be construed as a mistake of misdescription, as there is no indica-
tion that Beatrice Weiner intended for coverage to extend in such a
manner. Although the court does not agree with the *Pratz* court's legal rea-
soning, it notes that the outcome in Pratz may have been correct, as it is
possible that—as here—coverage may have later been extended under an
implied-in-fact contract.

state courts have made similar conclusions regarding other statutes. *See Allstate Indem. Co. v. Nelson*, 728 N.Y.S.2d 82, 83 (2001) ("Since the owner's insurance policy did not provide coverage because the vehicle was operated without the owner's consent, a prompt notice of disclaimer was not required."); *Liberty Mut. Ins. Co. v. Allstate Ins. Co.*, 654 N.Y.S.2d 403, 404-05 (1997) ("Moreover, since Allstate's policy was never intended to provide coverage to the vehicle involved in the underlying accident, coverage cannot be created on account of [Allstate's] late service of a notice of disclaimer"); *Zappone v. Home Ins. Co.*, 432 N.E.2d 783, 786 (1982) ("We conclude, however, that the Legislature did not intend by its use of the words 'deny coverage' to bring within the policy a liability incurred neither by the person insured nor in the vehicle insured[.]").

At this stage, the court cannot squarely hold that there was or was not an Allstate insurance policy in place at the time of Ms. Fenner's accident. But the question of whether Plaintiff can fairly be said to have failed to timely deny or disclaim coverage is one of little practical import. If there was no implied-in-fact policy in place at the time of Ms. Fenner's accident, Allstate was under no obligation to timely deny or disclaim coverage under the policy. If there *was* an implied-in-fact policy in place at the time of Ms. Fenner's accident, Allstate cannot properly disclaim coverage for the accident, no matter whether their attempt to do so is timely or delayed.

## C.   Duty to Defend

Allstate also seeks summary judgment on its claim for a declaration that it has no duty to defend. (Mot. at 1.) In response, the Weiner Defendants argue that there is a material factual dispute as to whether Allstate is estopped from withdrawing its legal defense for the Weiner Defendants due to reliance interests engendered by Allstate's having begun this legal defense in the first place. (Weiner Opp. at 9-10.) Pulling back support now, the

Weiner Defendants argue, would prejudice them in the Underlying Action. (*Id.*)

1. Legal Framework

"[U]nder New York law, an insurer has a duty to defend whenever the allegations within the four corners of the complaint potentially give rise to a covered claim or where the insurer had actual knowledge of facts establishing a reasonable possibility of coverage." *Roman Cath. Diocese of Rockville Ctr., N.Y. v. Arrowood Indem. Co.*, No. 20-CV-11011 (VEC), 2022 WL 558182, at *4 (S.D.N.Y. Feb. 23, 2022). Thus the "duty of an insurer to defend is broader than its duty to pay." *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 115 (2d Cir. 2005); *see also U.S. Liab. Ins. Co. v. WW Trading Co.*, No. 16-CV-3498 (CBA) (JO), 2018 WL 6344641, at *16 (E.D.N.Y. Sept. 28, 2018) ("Put another way, the duty to defend perdures until it is determined with certainty that the policy does not provide coverage.") (quoting *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 620 (2d Cir. 2001)).

Common law estoppel has been found by New York courts where (1) there was an unreasonable delay in denying coverage and (2) that delay caused prejudice to the insured. *U.S. Underwriters Ins. Co. v. Image By J & K, LLC*, 335 F. Supp. 3d 321, 340 (E.D.N.Y. 2018); *Bluestein & Sander v. Chi. Ins. Co.*, 276 F.3d 119, 122 (2d Cir. 2002). Where the insurer has initiated a defense, "prejudice is often presumed" unless the insurer "reserv[es] the privilege" to withdraw that defense. *U.S. Underwriters Ins. Co.*, 335 F. Supp. 3d at 340. This presumption reflects the fact that an insured, in relying on the insurer's defense, may "suffer[] the detriment of losing the right to control its own defense." *Bluestein*, 276 F.3d at 122.

2.  Application

The Weiner Defendants argue that the "action by the insurer of
undertaking the defense causes prejudice to the insured by losing
the right to control its defense." (Weiner Opp. at 10.) They allege
that "ALLSTATE by its own admission knew on July 12, 2017
that Beatrice Weiner died . . . [h]owever, ALLSTATE undertook
to represent defendants Weiner in the Underlying Action on June
25, 2018." (*Id.*) Finally, they note that "[o]n November 13, 2018
Allstate sent a letter to the Estate of Beatrice Weiner" stating that
it was providing a defense to ERIC WEINER and ARTHUR
WEINER in the action commenced by DIANNE FENNER," adding
that "the letter doesn't reserve right to take away defense." (*Id.*)

The information in the record belies this allegation. On July 13,
2017, Allstate sent a letter acknowledging receipt of Ms. Fenner's
attorney's letter of representation. (Ex. Q to Fenner Opp. (Dkt.
42-26) at ECF 6.) In that letter, Allstate explicitly stated that it
"does not waive any of its rights or defenses with regard to any
potential claims under the policy by any action previously taken
or by any action taken in the future. Rather Allstate reserves all
of its rights and possible defenses in any way relating to questions
raised by any such potential claims." (*Id.*) Significantly, this letter
was sent *before* Allstate undertook any Defense on behalf of Ar-
thur and Eric Weiner. In a later letter, sent on November 13,
2018, Allstate made its reservation of rights more specific, stating
that "although [Allstate] is providing a defense to Eric Weiner
and Arthur Weiner in the underly inaction, it is reserving its right
to deny indemnification and to commence a declaratory judg-
ment action to determine the rights and obligations of the parties
pursuant to" the policy, as it "is Allstate's position that there is no
coverage under the policy."(Ex. X to Fenner Opp. (Dkt. 42-26) at
ECF 25.) Given Allstate's consistent reservation of its rights, be-
ginning before litigation commenced, any potential prejudice to

the Weiner Defendants cannot be deemed sufficient to estop All-state from denying a continued defense if the duty to indemnify is not found.

Given this court's holding that Eric Weiner was neither entitled to coverage under an express policy or an implied policy and no-tice of Allstate's reservation of its rights was properly given, Allstate has no duty to continue to defend Eric Weiner. At this stage, however, summary judgment in favor of a declaratory judgment denying Arthur Weiner a defense in state court cannot be granted. Allstate may continue to reserve its rights to later deny him a defense. If, at trial, a jury finds that no implied-in-fact contract was formed, and a judgment is entered declaring that Allstate need not indemnify Arthur Weiner under any policy, All-state need not continue to mount a defense. At this stage, however, it has not yet been "deemed with certainty that the pol-icy does not provide coverage," *United States Liab. Ins. Co.*, 2018 WL 6344641, at *16, and summary judgment for a declaration denying Arthur Weiner a defense would be premature.

## IV. CONCLUSION

For the reasons stated above, Allstate's motion for summary judg-ment is DENIED with regard to Allstate's declaratory judgment claims denying indemnification and defense to Arthur Weiner, as a genuine issue of material facts exists with regard to a possible implied-in-fact contract between Arthur Weiner and Allstate.[7]

Allstate's motion for summary judgment is GRANTED with re-gard to Allstate's declaratory judgment claims denying indemnification and defense to Eric Weiner. Accordingly, this court issues a declaration that (1) Allstate is not contractually

---

[7] In the event that a jury determines at a later date that no implied-in-fact contract was in effect between Arthur Weiner and Allstate, this court in-tends to enter an order requiring Allstate to reimburse Arthur Weiner for all premium payments made after the death of Beatrice Weiner.

obligated to defend Eric Weiner in the Underlying Action, (2) Allstate has no obligation to continue to pay for legal costs for the defense of Eric Weiner in the Underlying Action, (3) counsel retained by Allstate to defend Eric Weiner in the Underlying Action can withdraw as counsel for Eric Weiner, and (4) Allstate is not contractually obligated to indemnify Eric Weiner in the Underlying Action.

SO ORDERED.

Dated:      Brooklyn, New York
            March 8, 2023

                                    s/Nicholas G. Garaufis
                                    _____
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge

25